UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Reginald C. Howard, | Case No. 2:19-cv-00749-CDS-EJY |
| Plaintiff | **Order Granting Defendant's Motion for Summary Judgment and Closing Case** |
| v. | |
| Steven D. Grierson, et al., | [ECF No. 76] |
| Defendants | |

Pro se plaintiff Reginald C. Howard brings this § 1983 action against Lieutenants D. Willet and J. Lewis, correctional officers J. Arqueta, J. Kronberg-Rasner, case worker G. Hernandez, Warden J. Howell, and deputy director H. Wickham for alleged constitutional violations occurring while he was incarcerated at Southern Desert Correctional Center (SDCC). ECF No. 8. Defendants Willet, Lewis, Kronberg-Rasner, Hernandez, Howell, and Wickham (collectively, defendants)[1] move for summary judgment on all claims. ECF No. 76. Howard opposes. ECF No. 82. For the reasons herein, I grant defendants' motion for summary judgment and kindly direct the Clerk of Court to close this case. [2]

**I.    Defendants' violation of the local rules**

As a preliminary matter, I note that both the defendants' and plaintiff's pleadings violate Local Rule IC 2-2(3), which requires exhibits and attachments "be attached as separate files[,]"

---

[1] Defendant Arqueta has been served (ECF No. 61) but he is not represented by the defendants' counsel. Arqueta has not yet filed an answer, nor he is a party to the motion for summary judgment.

[2] Defendants argue that they are entitled to qualified immunity because their conduct did not violate any right, much less any clearly established right. ECF No. 76 at 17. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). While viewing the record in the light most favorable to Howard, for the reasons above, he failed to demonstrate a violation of his rights. Therefore, it is unnecessary to reach the qualified immunity issue on these claims and I decline to do so.

not as part of the base document. Given the age of this case and the need for judicial efficiency, the court does not strike the filings under Local Rule IA 10-1(d). However, the parties are cautioned that future violations of the rules may result in the court striking inappropriately filed documents or exhibits.[3] The court advises the parties that adherence to the rules assists the court in resolving motions more expeditiously.

## II.   Background[4]

In March of 2018, Howard's cellmate was discharged from SDCC causing an extra mattress to remain in the cell. FAC, ECF No. 8 at 5. On March 24, 2018, defendant Kronberg-Rasner instructed Howard to move the extra mattress from the cell to the office control station. *Id.* The next day, he noticed that Howard had not moved the mattress and again instructed Howard to move it. *Id.* Howard states that he was on crutches and informed Kronberg-Rasner that he could not move the mattress because of his lift restriction. *Id.* Kronberg-Rasner told him to either move the mattress or show him the lift restriction documentation. *Id.* Howard pointed his finger at Kronberg-Rasner, began to charge in a threatening manner, and yelled "[i]f you want the mattress, you'll have to come through me to get it." Disciplinary Forms, Defs.' Ex. A-1, ECF No. 76 at 23. Kronberg-Rasner charged Howard with violating inmate disciplinary rule MJ-25[5] for making threats and secured him in an empty day room. *Id.*

Kronberg-Rasner reported the incident to defendant Willet, the shift commander. Willet Decl., Defs.' Ex. A, ECF No. 76 at 20–21. Because a threat was involved, Kronberg-Rasner recommended that Howard be placed in administrative segregation, which Willet approved. *Id.* The recommendation was made pursuant to NDOC Administrative Regulation (AR) 507, which

---

[3] "Pro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see also, Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.")

[4] The court liberally construes Howard's pleadings. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (Courts must construe pro se pleadings liberally.).

[5] Nevada Department of Corrections Administrative Regulation 707, inmate disciplinary process https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20707%20-%20Inmate%20Disciplinary%20Process%20-%2002132017%20Temporary%20Signed.pdf (last visited 1/30/2024).

states: "[i]nmates will be temporarily placed in administrative segregation to protect the safety of the inmate, other persons, the institution or community or to conduct investigations into violent misconduct or misconduct which threatens escape or significant disruption of institutional operations." AR 507.01(1)(B). An inmate who is placed in administrative segregation "will receive an initial administrative segregation hearing within three (3) working days of that temporary placement." *Id.* at (2)(C).

In April of 2018, a hearing was held before the classification committee to determine whether Howard should remain in administrative segregation pending his disciplinary hearing. Case Notes, Defs.' Ex. A-3, ECF No. 76 at 33–36. The committee determined that Howard would remain in administrative segregation. *Id*; Disciplinary Form III, Defs.' Ex A-1, ECF No. 76 at 24. Later that month, the disciplinary hearing was held and the committee amended the charges from MJ-25 to MJ-26, possession of contraband. Disciplinary Forms, Defs.' Ex. A-1, ECF No. 76 at 27. Howard was found not guilty because the staff report did not specifically identify Howard as the inmate in possession of the mattress. *Id.*

Howard alleges that Arqueta allowed inmate food porters to serve inmates in administrative segregation and protective custody contaminated food. FAC, ECF No. 8 at 7. Howard claims that on May 8, 2018, in an attempt to show the correctional officers the contaminated food he was served, a piece of cake slid off his food tray onto the floor in front of his cell door. *Id.* at 8. However, the record reflects a different story. On May 8, 2018, Howard was charged with violating MJ-40,[6] which prohibits propelling items. The relevant disciplinary form states that after complaining that his piece of cake was too small, he allegedly threw the cake through the food flap in his cell door towards defendant Arqueta. Disciplinary Form, Defs.' Ex. A-4, ECF No. 38–39. The parties agree that Arqueta picked up the cake and placed it back on

---

[6] Nevada Department of Corrections Administrative Regulation 707, https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20707%20-%20Inmate%20Disciplinary%20Process%20-%2002132017%20Temporary%20Signed.pdf

Howard's tray. *Id*; FAC, ECF No. 8 at 7. Howard claims the contaminated food made him ill, and seemingly insinuates that consuming the cake exposed him to hepatitis-c. *Id.* at 8–9. However, Howard did not complain of food contamination when he visited the infirmary later that day, but rather complained of improper food portion size. Grievance History, Defs.' Ex. A-6, ECF No. 76 at 65 ("You were seen at the SDCC Medical unit on May 10, 2018, complaining of headache, high blood pressure, and nausea due to not receiving the correct portions of food. There is no mention in your medical chart of food contamination, and no distress was noted by SDCC Medical staff.").

In June of 2018, a disciplinary hearing was held on Howard's charge of violating MJ-40, to which he pled not guilty. Disciplinary Form, Defs.' Ex. A-4, ECF No. 76 at 38–39. After questioning Arqueta and Vasquez, the hearing committee found Howard guilty of violating MJ-40 for propelling the cake and disciplined Howard with 30 days in disciplinary segregation, as well as the loss of canteen privileges for 45 days. *Id.* at 41–42.

### III. Procedural history

In his first amended complaint, Howard alleged claims of retaliation in violation of the First Amendment, lack of due process in violation of the Fourteenth Amendment, and failure to protect in violation of the Eighth Amendment, among other claims. ECF No. 8. Pursuant to a screening order (ECF No. 9), and order granting in part defendants' partial motion to dismiss (ECF No. 28),[7] the following claims survived to this stage of litigation:

(1) retaliation claim against Willet for placing Howard in administrative segregation;

(2) due process claim against Kronberg-Rasner, Willet, Wickham, and Howell for placing Howard in administrative segregation while the charges for threatening Kronberg-Rasner were being investigated;

---

[7] In June 2021, defendants filed a partial motion to dismiss, asking the court to dismiss Howard's claims for monetary damages against Warden Howell and Deputy Director Wickham in their official capacities, and to dismiss Howard's request for "vague injunctive relief." ECF No. 26. District Judge Andrew P. Gordon granted the motion in part, dismissing Howard's claims for money damages against Howell and Wickham in their official capacities. ECF No. 28.

4

      (3) due process claim against Willet and Hernandez based on the disciplinary hearing for cake throwing; and

      (4) failure to protect against contaminated foods claim against Arqueta, Lewis, Howell.

## IV. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp.*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## V. Discussion

### A. Howard's retaliation claim against Willet fails.

Howard alleges that Willet retaliated against him in violation of the First Amendment by placing him in administrative segregation. ECF No. 8 at 5–6. Howard insinuates—but fails to cite any evidence in support thereof—that because he had previously filed grievances and a lawsuit against Willet, Willet knowingly refused to acknowledge his medical lift restriction, constituting an act of retaliation "with the intent to cause harm which is not a legitimate correctional goal." Opp'n, ECF No. 82 at 5. To state a viable First Amendment retaliation claim

5

in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

The law clearly establishes that placing an inmate in administrative segregation qualifies as an adverse action, so the first requirement is met here. *See Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012) (holding that being placed in administrative segregation constitutes an adverse action.). To satisfy factor two, Howard must show that his protected conduct was the substantial or motivating factor behind the defendant's adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). To do so, Howard "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's]' intent" in the challenged conduct. *Id.* (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). Howard fails to meet that burden here. Rather, Howard argues that Willet's failure to acknowledge his medical lift was retaliatory, while failing to address the reason he was placed in administrative segregation—his verbal threats. *See* Opp'n, ECF No. 82 at 5. The Ninth Circuit has "repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 904–05 (9th Cir. 2014)(affirming district court's grant of summary judgment where there was no evidence the claimed harassment was in retaliation for an earlier suit)(citing *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011); and *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (specific evidence of retaliation required). Without more, Howard's claim of retaliation is speculative at best.

Further, assuming arguendo that Howard could establish he did satisfy the first four requirements, he fails to establish the fifth requirement. When considering this factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of

proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

In this circuit, preserving institutional order, discipline, and security are legitimate penological goals. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). If an official action is taken to preserve such legitimate penological goals, it will defeat a claim of retaliation. *Id.* (holding that the "district court properly granted summary judgment on [an inmate's] retaliation claim" when there was "some evidence" to support prison official's action and action "served the legitimate penological purpose of maintaining prison discipline" because "preserving institutional order and discipline" are "legitimate penological goals"). Here, Howard was charged with violating MJ-25 for threatening an officer. Willet Decl., Defs.' Ex. A, ECF No. 76 at 20. AR 507 outlines the policy regarding administrative segregation. It states: "[i]nmates will be temporarily placed in administrative segregation to protect the safety of the inmate, other persons, the institution or community or to conduct investigations into violent misconduct or misconduct which threatens escape or significant disruption of institutional operations." AR 507.01(1)(B). Accordingly, Kronberg-Rasner recommended that Howard be placed in administrative segregation, and the decision was approved by Willet and later the classification committee. Case notes, Defs.' Ex. A-3, ECF No. 76 at 33–36; Willet Decl., Defs.' Ex. A, ECF No. 76 at 20. Therefore, the decision to place Howard in administrative segregation advanced a legitimate penological goal. *See Barnett*, 31 F.3d at 816. Accordingly, based on the evidence before the court, Howard's retaliation claim fails so I thus grant summary judgment in favor of the defendants.

**B. Howard's due process claims fail.**

Howard alleges his due process was violated because (1) he was placed in administrative segregation while the charges issued by Kronberg-Rasner were being investigated; and (2) he was not permitted to call witnesses or present documents at the disciplinary hearing. ECF No. 8 at 10. Both of Howard's claims fail.

7

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving an inmate of a liberty interest without adequate procedural safeguards. *See* U.S. Const. amend. V, XIV. A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law. *Kenner v. Vidaurri*, 2013 U.S. Dist. LEXIS 23765 (D. Nev. Feb. 21, 2013). As a threshold requirement, a plaintiff must first establish the existence of a protected liberty interest. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Liberty interests arise from the Due Process Clause itself or state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. at 472. Once the plaintiff has established a liberty interest, the plaintiff must then show that the defendants failed to provide due process. *Serrano*, 345 F.3d at 1078. However, the Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. *See Hewitt*, 459 U.S. at 466–68.

### 1. *Administrative segregation*

Howard alleges that Kronberg-Rasner, Willet, Wickham, and Howell denied him due process by placing him in administrative segregation while the charges issued by Kronberg-Rasner were being investigated. ECF No. 8. Defendants argue that this claim fails because Howard failed to establish a liberty interest. ECF No. 76 at 10. I agree.

As held in *Hewitt*, the Due Process Clause does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. 459 U.S. 460, 466–68. While inmates have a liberty interest in avoiding transfer to a particular condition of confinement that may arise because of state prison regulations, the liberty interest only arises if the transfer "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). Here, Howard failed to allege or present evidence that the placement caused him an atypical or significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484 (inmate does not have a liberty interest in preventing transfer to more restrictive

conditions of confinement, unless the inmate can demonstrate that the transfer caused "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

Howard has failed to establish that he had a liberty interest, and as a result, fails to establish the threshold for a due process claim. Without evidence of an implicated liberty interest, this claim fails.

### 2. *Disciplinary hearing and sanctions*

Howard also claims that Willet and Hernandez denied him due process because he was not able to call witnesses or present documents at the disciplinary hearing before being disciplined. ECF No. 8 at 10; ECF No. 82 at 6 ("the due process violation is in the fact that plaintiff had documents in which plaintiff needed to submit in his defense"). However, the record shows that he was indeed given the opportunity to call witnesses and present evidence, so this claim fails.

The classification committee held a hearing on March 27, 2018, to determine whether Howard should remain in administrative segregation pending his disciplinary hearing. Case Notes, Defs.' Ex. A-3, ECF No. 76 at 33–36. At the hearing, Howard declined to present witnesses or make statements. *Id*. Nonetheless, Howard's evidence was still fully considered, and Howard was found not guilty. *See* Disciplinary Form III, Defs.' Ex A-1, ECF No. 76 at 26–27. And as defendants argue, "[w]hile Howard asserts that he was not permitted [to] call witnesses or produce documents, he fails to identify any specific instance where he was deprived of the opportunity to fully present his side of the story[.]" ECF No. 83 at 10. As a result, this claim also fails. *See Cyprian v. Givens*, 540 F. App'x. 817, 818 (9th Cir. 2013) (rejecting inmate's due process claim because the inmate failed to show "that he was denied notice of the disciplinary charge and evidence against him, or the opportunity to present evidence at hearings at which he was ultimately found not guilty"); *see also Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (holding that inmate's due process claim failed when any procedural error was corrected by not imposing

penalty on inmate). Accordingly, summary judgment for in defendants' favor is granted on all due process claims.

### C. Howard's claim of failure to protect against Arqueta, Lewis, Willet, and Howell fails.

A "failure to protect" claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate…safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To prevail on an Eighth Amendment claim for failure to protect, an inmate must demonstrate (1) they are incarcerated under conditions posing a substantial risk of serious harm and (2) the particular defendant acted with deliberate indifference. *Id.* at 834. Deliberate indifference is established only where the defendant "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted). To be liable, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If an official fails to alleviate a significant risk he should have perceived but did not, an inmate does not state a claim." *Wolff v. Hood*, 242 F. Supp. 2d 811 (D. Or. 2002) (citing *id.*).

Here, Howard has not provided evidence to establish that he suffered significant injury or illness directly resulting from his consumption of contaminated food while in administrative segregation. Howard alleges that defendants Arqueta, Lewis, Willet, and Howell knew that inmate food porters were intentionally contaminating the food of inmates in protective custody and administrative segregation, thus constituting a violation of his Eighth Amendment rights. ECF No. 8 at 7, 17. He claims that he became ill on May 10, 2018, and had to be taken to the medical infirmary as a result of eating contaminated food from the inmate food porters. *Id* at 9. But, although Howard went to the medical infirmary on May 10, 2018, he complained of headache, high blood pressure, and nausea due to "not receiving the correct portion of foods"– not contaminated food. Grievance History, Defs.' Ex. A-6, ECF No. 76 at 65; *see also* Progress

Notes, Defs.' Ex. B-1, ECF No. 79 at 6. Thus, Howard has no objective evidence to support that he was confined in administrative segregation under conditions posing a substantial risk of serious harm.

Defendants also argue that Howard's claim fails because he cannot establish that any defendants knew of and disregarded an excessive risk to Howard's health and safety. ECF. No. 76 at 16. I agree. There is nothing in the record indicating that defendants Arqueta, Willet, Lewis, and Howell had any knowledge of contaminated food. In fact, they disclaimed such knowledge. *See* Willet Decl., Defs.' Ex. A, ECF No. 76 at 21 (declaring that he had no knowledge of the cake or other food served to Howard or whether his food was contaminated); Lewis Decl., Defs.' Ex. C at 75 (same); Grievance History, Defs.' Ex. A-6, ECF No. 76 at 65 ("You had also indicated that cake served to you on May 10, 2018 was not standard size and was contaminated by Correctional Officer Arqueta. There is no evidence that Officer Arqueta tampered with your food."); DVD audio of the Disciplinary Hearing, Defs.' Exhibit 5, Part 3 at 6:40–6:55 (Arqueta stated at the that he had no knowledge of food contamination). Because there is no evidence that anyone but Howard had knowledge that the food he ate was allegedly contaminated, Howard fails to establish that defendants were aware of such contamination. Accordingly, I grant summary judgment in favor of defendants because there is no genuine issue of material fact that Howard was not injured because of the allegedly contaminated food while in administrative segregation, or that defendants were aware of such contamination.

### D. Defendant Arqueta

Although Arqueta has not yet filed an answer, nor has he movedd for summary judgment, I *sua sponte* grant summary judgment in his favor pursuant to Federal Rule of Civil Procedure 56(f). Although Rule 56(f) requires a court to give a party "notice and a reasonable time to respond" prior to granting a non-moving party summary judgment, for the reasons described above, I find that the legal and factual issues involved were sufficiently addressed by defendants' motion for summary judgment. *See Tenzeron behalf of A.T. v. Moore*, 2019 U.S. Dist. LEXIS 200556,

*13 (D. Nev. Sep. 13, 2019). Because there is no genuine issue of material fact that Howard was not injured by contaminated food while in administrative segregation or that Arqueta was aware of such contamination, I also grant summary judgment in favor of Arqueta.

## VI. Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [ECF No. 76] is GRANTED.

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

Dated: February 9, 2024

_____
Cristina D. Silva
United States District Judge